1

2

3

4

5

6

7

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

8

9

10

11

12

13

14

| | |
|---|---|
| ROBERT LEE YATES, JR.,  )<br><br>Petitioner,  )<br><br>v.  )<br><br>STEPHEN D. SINCLAIR,  )<br><br>Respondent.  ) | CASE NO. C13-0842RSM<br><br>ORDER GRANTING IN PART AND<br>DENYING IN PART MOTION FOR<br>DISCOVERY AND TO EXPAND THE<br>RECORD<br><br>**CAPITAL CASE** |

## I.     INTRODUCTION

15

16

17

18

19

20

21

22

23

24

25

26

27

28

This matter comes before the Court on Petitioner's Motion for Discovery and to Expand the Record as to Claims 4, 9 and 14 in his habeas petition. Dkt. #39. Specifically, Petitioner seeks discovery related to his "fair cross-section" claim, asking the Court to compel the disclosure of jury selection materials that would allow him to examine whether his jury was selected at random from a fair cross-section of the community. *Id.* In addition, Petitioner seeks authorization to hire an expert witness on the typical practices of prostitutes possessing money, and seeks the state court aggravated murder reports used to conduct his proportionality review. *Id.* The State opposes the motion in its entirety, essentially arguing that this Court is limited to a review of the state court record as it was presented when the state court adjudicated the claims. Dkt. #43. For the reasons sets forth herein, the Court agrees with the State in part and GRANTS IN PART AND DENIES IN PART Petitioner's motion.

ORDER
PAGE - 1

## II.    DISCUSSION

### A. Legal Standard

Rule 6(a) of the Rules Governing § 2254 cases provides that this Court may, for good cause, allow discovery.  Rule 6(b) requires a party requesting discovery to provide reasons for the request, and to specify any requested documents.  Unlike civil litigants, a habeas petitioner is not presumptively entitled to discovery.  *See Rich v. Calderon*, 187 F.3d 1064, 1068 (9th Cir.1999).  "Good cause" for discovery exists when a petitioner establishes a *prima facie* case for relief.  *See Harris v. Nelson*, 394 U.S. 286, 290, 89 S. Ct. 1082, 22 L. Ed. 2d 281 (1969). "The availability of any discovery during a habeas proceeding is committed to the sound discretion of the district court."  *Campbell v. Blodgett*, 982 F.2d 1356, 1358 (9th Cir. 1993). Good cause may be shown "where specific allegations before the court show reason to believe that the petitioner may, if the facts are fully developed, be able to demonstrate that he is . . . entitled to relief.'"  *Bracy v. Gramley*, 520 U.S. 899, 908-09, 117 S. Ct. 1793, 138 L. Ed. 2d 97 (1997) (quoting *Harris v. Nelson*, 394 U.S. 286, 300, 89 S. Ct. 1082, 22 L. Ed. 2d 281 (1969)). "Habeas is an important safeguard whose goal is to correct real and obvious wrongs.  It was never meant to be a fishing expedition for habeas petitioners to 'explore their case in search of its existence.'"  *Id.* at 1067 (quoting *Calderon v. U.S.D.C. (Nicholaus)*, 98 F.3d 1102, 1106 (9th Cir. 1996)).  Moreover, good cause does not exist if a defendant premises a discovery request on a claim that fails as a matter of law.  *See Thomas v. Taylor*, 170 F.3d 466, 474 (4th Cir. 1999) (finding that the trial court did not abuse its discretion in denying discovery request related to claim that failed as a matter of law).

///

///

ORDER
PAGE - 2

**B. Claim 4 – Denial of Fair Cross-Section**

Petitioner first argues that he is entitled to an opportunity to develop facts to show a fair cross-section violation.   Dkt. #39 at 4-10.   The Sixth Amendment guarantees a criminal defendant an impartial jury drawn from a fair cross-section of the community.   *Taylor v. Louisiana*, 419 U.S. 522, 530, 95 S. Ct. 692, 42 L. Ed. 2d 690 (1975).   Petitioner asserts that after he was convicted, he attempted to investigate whether he was denied a venire drawn from a fair cross-section of the community.   *Id.* at 4.   However, according to Petitioner, the Pierce County Prosecutor's Office advised the jury administrator not to provide information related to the summons and excusal processes.   Dkt. #39 at 4.   Petitioner then moved the state court for discovery and an evidentiary hearing.   *See* Dkts. #22 and #31 (State Court Record) (hereinafter "REC") at 15844.   The Washington Supreme Court denied discovery and ultimately dismissed the fair cross-section claims.   *In re Yates*, 177 Wn.2d 1, 19-22, 296 P.3d 872 (2013).   Petitioner now argues that the state court unreasonably denied him discovery and this Court should grant him reasonable discovery relevant to his claim.   Dkt. #39 at 5.

"In order to establish a *prima facie* violation of the fair-cross-section requirement, the defendant must show: (1) that the group alleged to be excluded is a 'distinctive' group in the community; (2) that the representation of this group in venires from which juries are selected is not fair and reasonable in relation to the number of such persons in the community; and (3) that this under-representation is due to the systematic exclusion of the group in the jury-selection process."   *Duren v. Missouri*, 439 U.S. 357, 364-66, 99 S. Ct. 664, 58 L. Ed. 2d 579 (1979) (finding that Duren met the test by showing that women, a distinct group, were over half the population but only 15% of jury venires over the course of nearly a year).   In other words, Petitioner must show that the source from which the Pierce County Superior Court drew

ORDER
PAGE - 3

eligible jurors, systematically excluded certain groups and, therefore, was not representative of

the community as a whole.  *See Taylor*, 419 U.S. at 528.

In the state court, in support of his discovery request, Petitioner had provided a

declaration of trial counsel stating that racial under-representation was common in Pierce

County venires:

> 2. I have lived and worked in Pierce County for many years. As a result, I
> am familiar with the community and its ethnic diversity.
>
> 3. To the best of my recollection, African-Americans and Latinos were
> under-represented on Mr. Yates' venire.  In addition, Asians may have also
> been under- represented.
>
> 4. This is not unusual in my experience in Pierce County Superior Court.
>
> 5. To the contrary, it is not uncommon for ethnic minorities to be under-
> represented in jury venires.

REC at 16056.

The Washington State Supreme Court addressed Petitioner's fair cross-section claims at

length, ultimately determining that he had failed to make a *prima facie* showing as to any of his

claims.  *In re Yates*, 177 Wn.2d at 19-25.  Specifically, the Court noted:

> Yates provides no census statistics relating to ethnicity of either Pierce
> County residents or the venire members in his case.  The sole evidence of
> underrepresentation Yates relies on comes from a declaration by Mary Kay
> High, Yates's defense attorney at trial.  In her declaration, High states, "To
> the best of my recollection, African-Americans and Latinos were under-
> represented on Mr. Yates' venire.  In addition, Asians may have also been
> under-represented."  Pet'r's Reply Br., App. LL.  High based her conclusion
> on her personal "familiar[ity] with the community and its ethnic diversity"
> that came from having "lived and worked in Pierce County for many years."
> *Id.*
>
> High's declaration fails to establish a prima facie case of a fair-cross-section
> violation because mere "underrepresentation," in the sense that a group's
> representation is not at least equal to its proportion of the community, is not
> sufficient to show that the representation is not "fair and reasonable."
> *Duren*, 439 U.S. at 364.  For example, in *United States v. Orange*, 447 F.3d

ORDER
PAGE - 4

792, 796 (10th Cir. 2006), a defendant presented evidence that in a given year, four groups were underrepresented in jury venires: African-Americans comprised 8.63 percent of the eligible population but only 5.06 percent of the venires, Native Americans comprised 4.27 percent of the eligible population but only 2.64 percent of venires, Asians comprised 1.64 percent of the eligible population but only 0.80 percent of venires, and Latinos comprised 2.74 percent of the eligible population but only 1.49 percent of the venires. The court held that this failed to establish the second *Duren* factor (i.e., that the representation of the groups was not fair and reasonable in relation to the population). *Id.* at 798-99. Although there is no single test to determine whether underrepresentation runs afoul of the fair and reasonable requirement, *Berghuis v. Smith*, 559 U.S. 314, 130 S. Ct. 1382, 1393-94, 176 L. Ed. 2d 249 (2010), *Orange* illustrates that a mere allegation of "underrepresentation" is insufficient to establish the second *Duren* factor. Consequently, the mere recollection of underrepresentation is insufficient to establish the second *Duren* requirement and Yates's claim fails.

*In re Yates*, 177 Wn.2d at 20-21.

The Court went on to address the additional cross-section claims made by Petitioner:

Yates next argues that court personnel violated his Sixth Amendment fair-cross-section right by excusing prospective jurors. This argument suffers from the same defect as above – it fails to establish that the venire did not contain a fair and reasonable representation of any distinctive group.

. . .

In sum, Yates's Sixth Amendment fair-cross-section claim fails because he cannot identify a distinct group that was excluded from the jury venire. Additionally, Yates fails to establish a due process claim based on a statutory violation.

. . .

Yates's next fair-cross-section claim focuses on Pierce County's juror pay and failure to enforce jury summonses, which Yates suggests excludes working class and nonelderly persons. Yates asserts, based on a hearsay declaration, that Pierce County pays jurors $10 per day and does not pursue prosecution of persons who fail to respond to a jury summons. Even assuming the nonelderly and working class persons Yates identifies are considered distinct groups under the first *Duren* requirement, Yates is unable to establish the second *Duren* element.

The second *Duren* element requires that Yates demonstrate "that the representation of [these] group[s] in venires from which juries are selected is not fair and reasonable in relation to the number of such persons in the community." *Duren*, 439 U.S. at 364. Though Yates includes the

ORDER
PAGE - 5

percentage of Pierce County residents that are between 18 and 65 years of age and the percentage that are over 65 years of age, he fails to establish the percentage of members of the venire within each of these categories. As to working class persons, Yates fails to show either their percentage of Pierce County residents or their representation in the venire. Yates's bare allegation of a discrepancy is insufficient, for "nowhere in our jurisprudence is it suggested a bare allegation that the jury list is not representative is sufficient to bring this issue into play." *Cienfuegos*, 144 Wn.2d at 232. Yates therefore fails to make a prima facie showing of a fair-cross-section violation.

We therefore dismiss Yates's claims that the Pierce County jury summons and exclusion procedures and jury pay violated his Sixth Amendment right to a venire that represents a fair cross section of the community.

*In re Yates*, 177 Wn.2d at 21-23.

Petitioner essentially argues in this Court that the denial of his discovery request was unreasonable because it denied him the opportunity to obtain the very information needed to provide the types of statistics that the state court found lacking. His argument, however fails to address why he could not, and cannot, obtain basic census information available to the public, or why he did not, and cannot, utilize the jury process information provided by the State in the state court proceedings. *See* REC 15773-89. Indeed, his attorney's Declaration appears not to have even addressed the most basic statistical information such as percentages of the identified groups in the communities from which the jurors were drawn as compared to the number of juries in Pierce County and make up of those juries. Accordingly, Petitioner fails to persuade this Court that he has good cause to pursue discovery on his fair cross-section claims, and his discovery request is DENIED.

**C. Claim 9 – Denial of Funds for Defense Expert Regarding Prostitution**

Petitioner next argues that he should have been provided the funds to hire an expert witness on the typical practices of prostitutes possessing money in order to answer the State's allegations about his alleged robbery motivation. Dkt. #39 at 10-12. He relies on *Ake v.*

ORDER
PAGE - 6

*Oklahoma*, 470 U.S. 68 (1986), for his asserted proposition that a criminal defendant should be provided with funds to answer the State's material evidence. *Id.*

Petitioner acknowledges that there is a Circuit Split as to whether *Ake* extends only to psychiatric experts. Dkt. #47. Significantly, he cites to *Jackson v. Ylst*, 921 F.2d 882, 885-86 (9th Cir. 1990), wherein the Ninth Circuit Court of Appeals noted that no Supreme Court case had extended the holding of *Ake* to other types of experts, such as those pertaining to eye witness identification. However, Petitioner argues that the proper test under *Ake* is whether the defendant has shown that appointment of the expert is necessary to address a disputed issue, and therefore should not be narrowly restricted to psychiatrists. Dkt. #47 at 5. He further argues that if a defendant can show that there exists a reasonable probability both that an expert would be of assistance to the defense and that denial of such expert assistance would result in a fundamentally unfair trial. Dkt. #47 at 6. The Court is not persuaded.

It is true that some courts have applied *Ake* to certain experts other than psychiatrists. *See, e.g., Babick v. Berghuis*, 620 F.3d 571, 579 (6th Cir. 2010). However, the United States Supreme Court has not extended *Ake* to any non-psychiatric expert. In fact, in *Caldwell v. Mississippi*, the Supreme Court expressly declined to consider whether "there was constitutional infirmity in the trial court's refusal to appoint various experts and investigators to assist" the defendant. 472 U.S. 320, 323 n.1, 105 S. Ct. 2633, 86 L. Ed. 2d 231 (1985). *See also Johnson v. Oklahoma*, 484 U.S. 878, 880, 108 S. Ct. 35, 98 L. Ed. 2d 167 (1987) (Marshall, J., concurring) (noting that *Caldwell* "reserved the equally important questions whether and when an indigent defendant is entitled to nonpsychiatric expert assistance"). But even if Petitioner was correct that *Ake* contemplates a right to non-psychiatric experts, Petitioner fails to meet the standard that he articulates. He has not shown this Court that there

exists a reasonable probability both that an expert would be of assistance to his defense and that denial of such expert assistance resulted in a fundamentally unfair trial. While he asserts that he will proffer the opinions to which the expert would have testified after he obtains funds to retain one, he does not explain to the Court what information he expects to demonstrate through an expert witness, how that would have rebutted the State's expert, how that pertained to the elements of the claims, and how that could have changed the outcome of the case, such that the denial of the expert resulted in a fundamentally unfair trial. In sum, he fails to present enough information to persuade the Court that it should provide funds in the first place. Accordingly, this request for discovery is DENIED.

### D. Claim 14 – Proportionality Review

Finally, Petitioner seeks the aggravated murder reports used by the Washington Supreme Court to conduct its proportionality review. Dkt. #39 at 12-13. Petitioner seeks those reports in order to support his Due Process claim. *Id.* The State opposes the motion, arguing that Plaintiff has failed to cite to any clearly established constitutional right with respect to proportionality reviews. Dkt. #43 at 7.

This Court has previously rejected the State's argument:

> Washington has established a statutory requirement for a proportionality review of a death sentence by the Washington Supreme Court. *See* RCW 10.95.130. . . .
> . . .
>
> The state maintains that this claim is not properly the subject of a *habeas* petition because it does not invoke a constitutional right. The state argues that petitioner does not have a constitutional right to a proportionality review of his death sentence. . . .
>
> The state is correct that the federal Constitution does not require a proportionality review of a death sentence, although such reviews are applauded as "an additional safeguard against arbitrary or capricious sentencing" and as "a means to promote the evenhanded, rational and

ORDER
PAGE - 8

consistent imposition of death sentences under law." *Pulley v. Harris,* 465 U.S. 37, 45, 49, 79 L. Ed. 2d 29, 104 S. Ct. 871 (1984) (citations omitted). **However, the state is incorrect in arguing that petitioner does not have a constitutional claim on this issue**. When a state provides a right of review or appeal, the state must comply with the requirements of the Due Process Clause of the Fourteenth Amendment. *Evitts v. Lucey,* 469 U.S. 387, 401, 83 L. Ed. 2d 821, 105 S. Ct. 830 (1985) (and cases cited therein). The question presented by Harris's claim is whether Washington's sentence review procedure complied with the due process clause of the Fourteenth Amendment in this case.

*Harris by & Through Ramseyer v. Blodgett*, 853 F. Supp. 1239 (W.D. Wash. 1994) (emphasis added).  Petitioner has an analogous claim in this case.

The Court agrees with Petitioner that the only meaningful way for it to evaluate and decide his proportionality review claim is to be able to examine the database of reports used by the Supreme Court to conduct its proportionality review.  Those reports constitute part of the record in this case and they should be provided.  Accordingly, the Court GRANTS Petitioner's request for those reports.

## III.   CONCLUSION

The Court, having reviewed Petitioner's motion for discovery, the opposition thereto and the reply in support thereof, along with the remainder of the record, hereby finds and ORDERS:

1.  Petitioner's Motion for Discovery and to Expand the Record as to Claims 4, 9 and 14 (Dkt. #39) is GRANTED IN PART AND DENIED IN PART as set forth above.

2.  The State SHALL supplement the record with the proportionality review records by a date to be determined at the parties' upcoming Status Conference on August 9, 2016.

ORDER
PAGE - 9

DATED this 25 day of July 2016.

RICARDO S. MARTINEZ
CHIEF UNITED STATES DISTRICT JUDGE

ORDER
PAGE - 10