UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| ROBERT LEE YATES, JR., | ) |
| | ) |
| Petitioner, | ) CASE NO. C13-0842RSM |
| | ) |
| v. | ) ORDER GRANTING IN PART AND |
| | ) DENYING IN PART MOTION FOR |
| | ) EVIDENTIARY HEARING |
| STEPHEN D. SINCLAIR, | ) |
| | ) **CAPITAL CASE** |
| Respondent. | ) |

## I.     INTRODUCTION

This matter comes before the Court on Petitioner's Motion for Evidentiary Hearing as to Claims 1, 2, 6, 10 and 15 in his habeas petition. Dkt. #40. Oral argument on this motion was held on October 31, 2016. Having considered those arguments and the parties' briefing, and for the reasons sets forth herein, the Court now GRANTS IN PART AND DENIES IN PART Petitioner's motion.

## II.     BACKGROUND

The following facts are taken from the Washington State Supreme Court, which were relied upon in its denial of Petitioner's Personal Restraint Petition ("PRP"), and do not appear to be disputed:

> Melinda Mercer turned to prostitution in November 1997 to support her
> heroin addiction. She was last seen alive on the night of December 6, 1997,

ORDER
PAGE - 1

leaving a Seattle tavern.  According to the testimony of a friend, Mercer left the tavern to go to Aurora Avenue to make money for a heroin buy.  On the following morning, Mercer's nude body was found in some blackberry bushes in a vacant lot in Tacoma, a lot used as a dump site for garbage. Some of her clothing had been thrown on top of her, but other items were never recovered.  An autopsy revealed that she had been shot three times in the back left side of the head.  Only one of the three bullets penetrated her brain, but it did so without affecting the areas that control consciousness and motor response.   Found nearby was a .25 caliber shell casing. Bloodstains on her blouse indicated that she had been clothed and upright when shot in the head.  After shooting her, the killer encased her head in four plastic grocery bags.  The two outer bags contained very little blood, but blood had pooled inside the two inner bags.  Mercer's nostrils and upper lip were visible through small tears in the two inner bags, which had been partially drawn into Mercer's mouth; the holes suggested that Mercer was alive when the bags were tied over her head and that she had used her teeth to create the holes.   Although Mercer could have died solely from the gunshot wounds, the oxygen deprivation would have hastened her death.

Connie Ellis likewise worked as a prostitute to support a heroin addiction. Ellis had reentered a methadone  treatment program on September 8, 1998, and she was last seen alive on September 17, 1998, when she received a dose of methadone at the clinic (a urinalysis taken at that time revealed that she was again using heroin).   On October 13, 1998, approximately 11 months after the discovery of Mercer's body, a search and rescue dog that was engaged in an unrelated search in Pierce County discovered Ellis's decomposed body 10 feet down an embankment in a greenbelt used as a dump site.  The degree of decomposition suggested that Ellis had been killed a month prior, not long after her September 17 visit to the methadone clinic.  Ellis's body was clothed in jeans, a blouse, and socks, but lacked any undergarments.  Ellis died of a single gunshot wound to the left side of her head.  The wound was consistent with a .25 caliber bullet.  Her head was encased in three plastic grocery bags.

<u>The Spokane County Murders</u>.  On the day Ellis's body was discovered, the Spokane County Sheriff's Department learned of the Pierce County case. In a phone call to one of the Tacoma detectives investigating the Ellis murder, a Spokane detective asked, "'Will you just tell me one thing? Does she have plastic bags on her head?'"  52 Verbatim Report of Proceedings (VRP) at 4855.  Detectives from Tacoma and Spokane shared information gathered  on  the  2  Pierce  County  murders  and  10  unsolved  murders committed in Spokane County between 1996 and 1998.  As did Mercer and Ellis, the 10 Spokane victims had a history of drug abuse and worked in prostitution (all were last seen in the East Sprague Street corridor in Spokane, an area known for prostitution).  Again like Mercer and Ellis, the Spokane victims had been shot in the head with a small caliber handgun.

ORDER
PAGE - 2

Moreover, just as Mercer's and Ellis's heads had been encased in plastic bags, two or three plastic bags had been tied over the heads of five of the Spokane victims. Similarly, plastic bags were found in the grave with one victim and near the body of another, and a towel was found on or near the first two victims.

On April 18, 2000, a year and a half after the discovery of Ellis's body, the Spokane police arrested Yates. The police first contacted him in July 1998, after the body of Michelyn Derning was discovered on July 7, 1998, a block north of Pantrol, a manufacturing company where Yates had worked since moving to Spokane in April 1996 after being released from the army. Yates gave the officer his name, date of birth, and address. A second contact occurred on November 9, 1998, when a police officer saw Yates pick up Jennifer Robinson in the East Sprague Street area. Yates told Robinson to say that he was one of her father's friends, and Robinson complied. When asked for identification, Yates gave the officer his driver's license. The officer ultimately let them move on, and Yates dropped Robinson off a few blocks away. Following the Pantrol interview and the Robinson incident, the police learned that Yates had once owned a white Corvette, a type of car that witnesses had reported seeing in relation to the disappearance of two of the earliest victims, Jennifer Joseph and Heather Hernandez. Late in 1999, a Spokane detective interviewed Yates, who claimed he never patronized Spokane prostitutes and owned no handguns. He admitted he had previously owned a white Corvette and had sold it to a friend, Rita Jones. The police located Yates's white Corvette in January 2000 and discovered under the front passenger seat the white mother-of-pearl button missing from Joseph's blouse. Bloodstains found in the Corvette matched Joseph's deoxyribonucleic acid (DNA).

Following Yates's arrest, the police developed additional evidence. On the day after the arrest, Christine Smith, a former prostitute, contacted the police to identify Yates as the person who had picked her up in Spokane in August 1998 and shot and robbed her in the back of his van. In May 2000, officers searched Yates's black Ford van, in the back of which Yates had installed a homemade wooden platform bed covered with carpet. The carpet, padding, and underlying wood tested positive for blood (later identified as that of Ellis and Murfin), and three bullet holes were found, as well as a spent bullet and bullet debris (containing Smith's DNA). From Yates's house, the police took records indicating that he had owned at least three guns, one .22 caliber and two .25 caliber handguns. Forensic analysis later showed that Mercer was killed with the same .25 caliber handgun used in the murders of Spokane victims Johnson, Oster, Wason, and Maybin and that Ellis was killed with a different .25 caliber gun, the same one used to murder Murfin and wound Smith. Other evidence taken from Yates's house established that, at the time Mercer and Ellis were last seen alive, Yates had been in the Tacoma area, fulfilling National Guard duties at nearby Fort

Lewis.  From Yates's closet, the police took a jacket identified as the one Smith had been wearing on the night Yates assaulted and robbed her, and from Yates's laundry room, they took a canvas coat that bore a stain later identified by DNA analysis as Mercer's blood.  Using Yates's hand-drawn map, police excavated an area on the east side of Yates's house, beneath his bedroom window, and recovered Murfin's body.  The semen collected by oral, vaginal, and/or anal swabs from Mercer and six Spokane victims (Scott, Johnson, Wason, Oster, Maybin, and Derning) was linked by DNA analysis to Yates, as were hairs found on Mercer and Maybin.

Yates was ultimately charged in Spokane County Superior Court with 10 counts of first degree murder and 1 count of attempted first degree murder.  On October 13, 2000, in exchange for the Spokane County Prosecuting Attorney's agreement not to seek the death penalty, Yates pleaded guilty to the Spokane County crimes, as well as to two counts of first degree murder in Walla Walla County and one in Skagit County.  His statement on plea of guilty did no more than acknowledge that he had committed with premeditated intent the murders listed in the amended information, which had provided nothing more than the names and dates of the murders.  Yates was sentenced to 408 years in prison.

<u>Prosecution of the Pierce County Murders</u>.  On July 17, 2000, the Pierce County Prosecuting Attorney filed an information charging Yates with the aggravated first degree murders of Mercer and Ellis.  On each count, the State alleged three aggravating factors and a firearm enhancement.  At the time the information was filed, the State also provided Yates with notice of its consideration of a special sentencing proceeding, inviting Yates to submit mitigation material to the prosecuting attorney.  At Yates's arraignment on October 31, 2000, he entered a plea of "not guilty," and the court read the State's notice of consideration of a special sentencing proceeding.  The court entered an order extending until January 15, 2001, the State's deadline for filing its notice to seek the death penalty, a notice that the State timely filed on January 12, 2001.

Opening statements were delivered on August 12, 2002, and the State rested its case-in-chief on September 11, 2002.  The defense rested the following day.  The jury found Yates guilty on both counts of first degree murder and likewise determined that, with respect to each count, the State had proved beyond a reasonable doubt the existence of all three aggravating circumstances.  Additionally, the jury found that Yates committed the murders while armed with a firearm.  After hearing the evidence and closing arguments in the special sentencing hearing, the jury returned a verdict for a death sentence.  At sentencing, the court rejected Yates's argument that his death sentence had to be served consecutively to the 408-year sentence imposed in Spokane County.  Yates filed a timely notice of appeal.

*State v. Yates*, 161 Wn.2d 714, 728-33, 168 P.3d 359 (2007); *In re Pers. Restraint of Yates*, 177 Wn.2d 1, 15, 296 P.3d 872, 879 (2013); Dkt. #11 at 2-4. In an *en banc* opinion, the Washington Supreme Court denied Mr. Yates's appeal, and affirmed his convictions and sentence. 161 Wn.2d at 794.

Mr. Yates then filed a personal restraint petition ("PRP"), raising 25 grounds for relief, including challenges to the juror summons and excusal procedures and claims of ineffective assistance of counsel, juror bias and violations of his public trial rights. 177 Wn.2d at 1. The Washington Supreme Court found that Mr. Yates had failed to raise any meritorious claims, and dismissed the petition. 177 Wn.2d at 65. Mr. Yates followed with a second PRP seeking to withdraw his guilty pleas to the Spokane County charges, arguing that he was improperly sentenced on two of the counts. *In re Pers. Restraint of Yates*, 180 Wn.2d 33, 321 P.3d 1195 (2014). The Washington Supreme Court agreed with Mr. Yates, but ultimately dismissed the petition on the basis that the improper sentencing had not caused him any prejudice. *Id.*

In the meantime, Mr. Yates filed a habeas petition in this Court. Dkt. #1. The Court granted a stay of execution pending resolution of this matter, and appointed counsel. Dkts. #4, #5 and #6. An Amended Habeas Petition followed. Dkt. #11. The Court then granted a stay of this matter while Mr. Yates sought to exhaust two claims that had not been considered by the Washington Supreme Court. Dkt. #25. Mr. Yates filed a third PRP, raising arguments of ineffective assistance of counsel, which the Washington Supreme Court dismissed for his failure to file the petition within the applicable statutory period. *In re Pers. Restraint of Yates*, 183 Wn.2d 572, 353 P.3d 1283 (2015).

On August 15, 2015, with the acquiescence of Mr. Yates, the Court lifted the stay in this matter and directed responsive briefing from the State. Dkt. #29. After the State filed its

ORDER
PAGE - 5

Response to the Habeas Petition, Mr. Yates filed a Motion for Extension of Time to Reply, a Motion for Discovery and to Expand the Record, and the instant motion for an Evidentiary Hearing.  Dkts. #38, #39 and #40.  On July 25, 2016, the Court granted in part and denied in part the Motion for Discovery, directing the State to supplement the record with the proportionality review records.  Dkt. #48.  The State has since made that supplementation.  Dkt. #55.

After the State responded that it did not oppose Plaintiff's Motion for an Extension of Time to file a Reply on Claims 5, 7, 8 and 11-13, the Court granted that motion, and directed that a Reply would not be due until all pending motions/issues are resolved.  Dkt. #46.  The Court also removed the Habeas Petition from the Court's motion calendar, which had been noted for consideration on 7/7/2016, and stated that it would re-note the Petition for consideration after a status conference had been conducted.  The Petition remains un-noted pending a decision on the instant motion.

### III.    DISCUSSION

**A.  Legal Standard for Habeas Petitions**

Habeas petitions are governed by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA").  28 U.S.C. § 2244, *et seq.*  Under AEDPA, a petitioner is entitled to federal habeas relief only if s/he can show that the state court's adjudication of his or her claim: (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.  28 U.S.C. § 2254(d)(1)-(2); *Greene v. Fisher*, 565 U.S. 34, 132 S. Ct. 38, 44, 181 L. Ed. 2d 336 (2011).

ORDER
PAGE - 6

AEDPA creates a "highly deferential" standard for evaluating state court rulings and "demands that state court decisions be given the benefit of the doubt." *Woodford v. Visciotti*, 537 U.S. 19, 24, 123 S. Ct. 357, 154 L. Ed. 2d 279 (2002) (per curiam).   A state court's decision is contrary to clearly established federal law if it "applies a rule that contradicts the governing law set forth in [Supreme Court] cases," or arrives at a different result in a case that "confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court." *Williams v. Taylor*, 529 U.S. 362, 405-06, 120 S. Ct. 1495, 146 L. Ed. 2d 389 (2000). "The state court's application of clearly established law must be objectively unreasonable, not just incorrect or erroneous." *Crittenden v. Ayers*, 624 F.3d 943, 950 (9th Cir. 2010) (internal quotation marks omitted).   Further, a federal court must "presume the state court's factual findings to be correct, a presumption the petitioner has the burden of rebutting by clear and convincing evidence." *Id.*

This standard is intentionally "difficult to meet," because habeas is intended to function as a "guard against extreme malfunctions in the state criminal justice systems, not as a means of error correction." *Greene*, 132 S. Ct. at 43 (citations omitted).   A petitioner must therefore show that the "state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Harrington v. Richter*, 562 U.S. 86, 103, 131 S. Ct. 770, 178 L. Ed. 2d 624 (2011).

### B.  Legal Standard for Evidentiary Hearing

Evidentiary hearings in federal habeas proceedings are authorized by Rule 8 of the Rules Governing § 2254 Cases.   To determine whether such a hearing may be granted, a federal habeas court must resolve several issues.   First, a hearing will not be granted where the record

contains an adequate factual basis supporting the claim on which a hearing is sought. *Baja v. Ducharme*, 187 F.3d 1075, 1078 (9th Cir. 1999). If the record does not contain an adequate factual basis, the court must determine whether the petitioner was diligent in developing the factual basis in state proceedings. *Id.*; 28 U.S.C. § 2254(e)(2).

If the petitioner was diligent, the court must determine whether a hearing is appropriate or required under *Townsend v. Sain*, 372 U.S. 293, 83 S. Ct. 745, 9 L. Ed. 2d 770 (1963). *Earp v. Ornoski*, 431 F.3d 1158, 1166-67 (9th Cir. 2005). Under *Townsend*, a petitioner is entitled to an evidentiary hearing if any one of the following circumstances is present:

1) The merits of the factual dispute were not resolved in the state hearing;

2) The state factual determination is not fairly supported by the record as a whole;

3) The fact-finding procedure employed by the state court was not adequate to afford a full and fair hearing;

4) There is a substantial allegation of newly-discovered evidence;

5) The material facts were not adequately developed at the state-court hearing; or

6) For any reason it appears that the state trier of fact did not afford the habeas applicant a full and fair hearing.

*Townsend*, 372 U.S. at 313; *Earp*, 431 F.3d at 1166-67. "Because the deferential standards prescribed by § 2254 control whether to grant habeas relief, a federal court must take into account those standards in deciding whether an evidentiary hearing is appropriate." *Schriro v. Landrigan*, 550 U.S. 465, 474, 127 S. Ct. 1933, 167 L. Ed. 2d 836 (2007). Thus, "a federal court may not grant an evidentiary hearing without first determining whether the state court's decision was an unreasonable determination of the facts." *Earp*, 431 F.3d at 1166-67. The presence of any of the six *Townsend* circumstances establishes that the state court's decision

ORDER
PAGE - 8

was unreasonable, and the federal court can therefore independently review the merits of that decision by conducting an evidentiary hearing. *Id.* at 1167. In sum, an evidentiary hearing must be provided if: (1) the petitioner has alleged facts that, if proven, would entitle him to habeas relief (*i.e.*, the petitioner has alleged a "colorable claim" to relief) and (2) he did not receive a full and fair opportunity to develop those facts in state proceedings. *Id.*

Where one of the circumstances enumerated in *Townsend* is not presented and a hearing is thus not mandated, the Court may nevertheless grant an evidentiary hearing in its discretion where facts are disputed. *Townsend*, 372 U.S. at 318. In deciding whether to grant a discretionary evidentiary hearing, the Court considers the thoroughness of the state court proceedings (generally deferring to state court determinations made after a full and fair hearing) and the strength of the claim (generally denying a hearing on frivolous claims). *See id.*

If the Petitioner failed to develop the claim's factual basis in state court, the Court may not hold an evidentiary hearing on the claim unless:

> (A) the claim relies on —
>
> (i) a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable; or
>
> (ii) a factual predicate that could not have been previously discovered through the exercise of due diligence; and
>
> (B) the facts underlying the claim would be sufficient to establish by clear and convincing evidence that but for the constitutional error, no reasonable factfinder would have found the applicant guilty of the underlying offense.

28 U.S.C. § 2254(e)(2). Section 2254(e)(2)'s provisions apply only where the petitioner's failure to develop the factual basis of the claim is attributable to a lack of diligence. *Williams v. Taylor*, 529 U.S. at 432. "Diligence" in developing a claim's factual basis requires that the petitioner "ma[k]e a reasonable attempt, in light of the information available at the time, to

ORDER
PAGE - 9

investigate and pursue claims in state court." *Id.* at 435. "Diligence will require in the usual case that the prisoner, at a minimum, seek an evidentiary hearing in the state court in the manner prescribed by state law." *Id.* at 437.

## C. Habeas Claims

Mr. Yates seeks an evidentiary hearing on his Claims 1, 2, 6, 10 and 15, arguing that the state court process was unreasonable resulting in unreasonably found facts. Mr. Yates seeks an evidentiary hearing only for contested material facts, or where the weight of the proffered evidence can only be determined by seeing witnesses testify and is critical to the evaluation of prejudice. *See* Dkt. #59 at 2.

### 1. Claim 1 – Martinez v. Ryan

On Claim 1, Mr. Yates argues that Petitioner's trial counsel were ineffective in failing to file any motion for improper venue based upon CrR 5.1, CrR 5.2(a), or Washington Constitution Article I, § 22 in violation of the Sixth Amendment. Dkt. #11 at Section III, ¶ III.1.A. Mr. Yate's post-conviction counsel did not raise this Claim in his original PRP. As a result, he alleges that such failure provides "cause and prejudice" for what would otherwise be a procedurally defaulted claim. Accordingly, he asks the Court to apply the procedural bar exception set forth in *Martinez v. Ryan*, 132 S.Ct. 1309 (2012), which held that "[i]nadequate assistance of counsel at initial-review collateral proceedings may establish cause for a prisoner's procedural default of a claim of ineffective assistance at trial." 132 S. Ct. at 1315.

Under *Martinez*:

> a prisoner may establish cause for a default of an ineffective-assistance claim in two circumstances. The first is where the state courts did not appoint counsel in the initial-review collateral proceeding for a claim of ineffective assistance at trial. The second is where appointed counsel in the initial-review collateral proceeding, where the claim should have been raised, was ineffective under the standards of *Strickland* v. *Washington*, 466

ORDER
PAGE - 10

U. S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984).  To overcome the default, a prisoner must also demonstrate that the underlying ineffective-assistance-of-trial-counsel claim is a substantial one, which is to say that the prisoner must demonstrate that the claim has some merit.

132 S. Ct. at 1318.  The State argues that there is no need for an evidentiary hearing on this Claim because the factual record is developed and the Court can make any necessary decisions based on that record.  Dkt. #52 at 7-8.

Mr. Yates "concurs in Respondent's assessment in a general sense – an evidentiary hearing may be unnecessary insofar as Respondent is not disputing any of the facts that support Petitioner's claim."  Dkt. #60 at 2.  However, Mr. Yates urges the Court to determine if an evidentiary hearing might clarify matters in dispute on this Claim.  At oral argument, Petitioner's counsel concede that an evidentiary hearing is only necessary should the Court desire one to develop factual contentions in the record.  Having heard the parties' arguments and reviewed the briefing in this matter, the Court finds an evidentiary hearing **unnecessary** on this Claim.

2.  *Claims 2, 6, 10 and 15*

On Claims, 2, 6, 10 and 15, Mr. Yates argues that the state court fact-finding process was patently unreasonable, and therefore the Court should conduct an evidentiary hearing on these Claims.  Dkt. #40 at 22-43.  Under § 2254(d)(2), a federal court is relieved of AEDPA deference when a state court's adjudication of a claim "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  To show such an error occurred, the petitioner must establish that the state court's decision rested on a finding of fact that is "*objectively* unreasonable."  *Lambert v. Blodgett*, 393 F.3d 943, 972 (9th Cir. 2004) (quoting *Miller-El v. Cockrell*, 537 U.S. 322, 340, 123 S. Ct. 1029, 154 L. Ed. 2d 931 (2003)); *see also Taylor v. Maddox*, 366 F.3d 992, 999 (9th

Cir. 2004) (stating that "a federal court may not second-guess a state court's fact-finding process unless, after review of the state-court record, it determines that the state court was not merely wrong, but actually unreasonable").

Challenges under § 2254(d)(2) fall into two main categories. First, a petitioner may challenge the substance of the state court's findings and attempt to show that those findings were not supported by substantial evidence in the state court record. *Taylor*, 366 F.3d at 999-1000. Second, a petitioner may challenge the fact-finding process itself on the ground that it was deficient in some material way. *Id.* at 999, 1001. Mr. Yates makes both types of challenges in the instant motion. Dkt. #59 at 3.

  a. <u>Claim 2 – Guilty Plea Ineffective Assistance of Counsel</u>

In Claim Two of his Petition, Mr. Yates alleges that his Sixth Amendment right to effective assistance of counsel was violated when his trial attorneys advised him to enter guilty pleas in Spokane County instead of continuing those cases, since those convictions and sentences were then introduced in the penalty phase of the Pierce County case. Dkt. #11 at Section III, ¶ ¶ III.1.B. and IV.B.1, *et seq.* Mr. Yates argues that by pleading guilty to 13 counts of murder in the Spokane County plea deal, it was easier for the State to demonstrate a common scheme or plan. Dkt. #40 at 26-27. Moreover, the jury was informed that Mr. Yates had been convicted of 13 murders and one count of attempted murder, and was serving a sentence that would exceed his lifetime. As a result, Mr. Yates asserts that his guilty pleas essentially left the Pierce County jury to determine whether he should receive any additional punishment for the Pierce County murders. Dkt. #40 at 26. In essence, the jury knew if they did not give him the death penalty, a life sentence would equal no additional punishment because he was already serving such a sentence.

ORDER
PAGE - 12

In his PRP before the Washington Supreme Court, Mr. Yates made the same allegations.  177 Wn.2d at 46.  The state court denied the Claim, finding that, "Yates cannot show that counsel's performance was prejudicial, even assuming it was deficient."  *Id.*  The court explained:

> Yates was arrested in Spokane County on April 18, 2000.  Richard Fasy was assigned as lead counsel for Yates in Spokane County.  In July 2000, the State and Yates began negotiating a plea agreement under which Yates would plead guilty and reveal the location of the body of an additional victim in exchange for a sentence of life without the possibility of parole.  Yates has stated that he intended "to admit responsibility for all of my crimes and to accept a sentence of life in prison without the possibility of parole."   Initially, the Spokane County prosecutor and Yates believed that this would apply to all of Yates's murders, including those that occurred in Pierce, Skagit, and Walla Walla Counties.   In mid-July, Pierce County notified Spokane County that it was filing an information charging Yates with two counts of aggravated first degree murder.   Roger Hunko was appointed to represent Yates in Pierce County at that time.   The Spokane County plea bargain remained on the table.  Ultimately, Yates went through with the plea bargain in Spokane County.  Hunko advised Yates to plead guilty in Spokane County, but the evidence is conflicted as to whether Hunko merely "agreed with Mr. Yates and his Spokane attorneys," or the Spokane County attorney "deferred to Mr. Hunko's judgment[.]"  In any event, Hunko "did not consider the possibility of seeking a continuance or stay of the consolidated Spokane County cases, so that the Pierce County cases would be tried first."
>
> In essence, Yates was left with two options that would serve his stated goals: (1) plead guilty in Spokane County and then face trial in Pierce County or (2) delay pleading guilty in Spokane County until the Pierce County trial was concluded. Both options entailed risks.  The risks of the first option – the one Yates pursued – are quite apparent.  By pleading guilty to 13 counts of murder in Spokane County before facing trial in Pierce County, Yates made it easier for the State to demonstrate the existence of a common scheme or plan and the evidence of his Spokane County murders was admissible during the penalty phase.  This risk was mitigated, to some degree, by the possibility of arguing in Pierce County that equitable estoppel precluded the State from seeking the death penalty.  The first option also provided a key benefit – it removed the possibility of the death penalty for 13 of Yates's murders.   The second option also presented certain risks.  The chief risk of the second option was that Spokane County might change its mind and seek the death penalty for the 13 cases it continued to handle.  *See State v. Wheeler*, 95 Wn.2d 799, 805,

631 P.2d 376 (1981) ("[A]bsent a guilty plea or some other detrimental reliance by the defendant, the prosecutor may revoke any plea *proposal*."). This would have been especially concerning had Yates been convicted in Pierce County, regardless of whether the death penalty was imposed, because Spokane County would have had an easier time proving the existence of a common scheme or plan.

Even assuming arguendo that Hunko's performance was deficient, Yates cannot establish prejudice. Had Hunko investigated all plausible options, he would have been faced with the strategic decision discussed above. Yates has provided no evidence that Hunko would have advised Yates differently. In addition, Yates has provided no evidence that Spokane County would have agreed to any proposed delay or that a court would have granted the delay over the County's objection. As a consequence, he has not demonstrated "a reasonable probability" that absent the deficient performance the result would have been different. *Strickland*, 466 U.S. at 694.

177 Wn.2d at 46-48 (record citations omitted).

The State argues that Mr. Yates failed to develop the factual basis of this Claim in state court, and therefore is not entitled to an evidentiary hearing. Dkt. #52 at 8-10. The State acknowledges that both Mr. Yates and the Pierce County Prosecutor sought additional evidence on this Claim. Dkt. #52 at 9. Mr. Yates sought an evidentiary hearing, while the Pierce County Prosecutor sought an Order from the state court directing the Spokane County Prosecutor to respond to the question of whether the office would have agreed to hold the Spokane County case until the Pierce County case was resolved. *Id.* The state court denied those requests. The State argues that, despite the denials, Mr. Yates failed to present any evidence that he did not have other means to get the testimony of the Spokane County Prosecutor, such as a Declaration. *Id.* at 9.

Having reviewed the record and considered the parties' oral arguments, the Court disagrees with the State. Mr. Yates's counsel has presented a Declaration in this Court asserting that the Spokane County Prosecutor was unwilling to give a voluntary statement at the

time.  Dkt. #62.  He acknowledges that such evidence was not presented to the state court, but explained that he would have been precluded from making such an assertion in that court because such evidence would have been inadmissible.  This left him in a "Catch 22" – he could present the very evidence that the state court then used to find that he had failed to demonstrate prejudice.  As a result, the Court finds that the fact-finding procedure employed by the state court was not adequate to afford a full and fair hearing to Mr. Yates on this Claim. Accordingly, the Court **grants** an evidentiary hearing on Claim 2.

       b.  <u>Claim 6 – Juror Misconduct</u>

      In Claim Six of his Petition, Mr. Yates alleges that his Sixth Amendment right to a fair and impartial jury, his Fourteenth Amendment right to due process of law, and his Eighth Amendment right to a reliable sentencing determination were violated when a sitting juror committed misconduct during trial.  Dkt. #11 at Section III, ¶ III.1F.  Specifically, he alleges that one of the jurors was potentially biased because she was planning to write a book about the case.  Dkt. #11 at Section IV, ¶ IV.F.1, *et seq.*

      In his initial PRP, Mr. Yates proffered support for his allegation by way of Declaration from another juror, William Good.   That Declaration stated:

> During the trial, there was a woman on the jury who said that she was planning to write a book about the trial after it was over. …  The woman was white and was younger than me.  Based on the juror's statements and actions, I believed that she was re-creating her notes outside of court from events inside court so that she would have material for her book.

177 Wn.2d at 30 (record citation omitted).

      Mr. Yates requested an evidentiary hearing on this Claim, but the Washington Supreme Court denied the request.  The court first recognized the following legal principles:

> A defendant is guaranteed a fair trial before an impartial jury by the Sixth and Fourteenth Amendments.  *Ross v. Oklahoma*, 487 U.S. 81, 85, 108 S.

ORDER
PAGE - 15

Ct. 2273, 101 L. Ed. 2d 80 (1988).  This right is violated by the inclusion on the jury of a biased juror, whether the bias is actual or implied.  *See Morgan v. Illinois*, 504 U.S. 719, 729, 112 S. Ct. 2222, 119 L. Ed. 2d 492 (1992) (inclusion of a single biased juror invalidates death sentence); *Smith v. Phillips*, 455 U.S. 209, 221-24, 102 S. Ct. 940, 71 L. Ed. 2d 78 (1982) (O'CONNOR, J., concurring) (noting that implied bias may violate a defendant's Sixth Amendment rights).  A juror with a direct financial incentive is deemed biased. *See United States v. Polichemi*, 219 F.3d 698, 704 (7th Cir. 2000).

*Id.* at 30-31.  However, the court then determined:

> The State correctly argues that this claim is too speculative (i.e., Yates has not established a prima facie case).  Even accepting all of Good's statements as true and giving them a liberal interpretation, Yates has provided no evidence whatsoever that the other juror's intention to write a book biased her in any way.  While it is entirely conceivable that such an intention *could* result in bias, *see Dyer v. Calderon*, 151 F.3d 970, 982 n.19 (9th Cir. 1998) ("[A] juror who … secretly plans to write a memoir of the experience might then vote differently to provide drama, or he might inject personal prejudice into the jury room in an attempt to jazz up the deliberative process."), it is Yates's burden to demonstrate prima facie evidence of that bias, and he has failed to do so. As such, Yates is not entitled to a reference hearing and this claim is dismissed.

*Id.*

Mr. Yates argues that the state court's concession that a juror's interest could result in bias requires a hearing to determine whether it did result in bias. Dkt. #40 at 41.  Further, he argues that the state court was not free to reject his Claim without such a hearing.  *Id.*  The State responds that Mr. Yates had a full opportunity to come forward with evidence in support of his claim, but he failed to develop the record. Dkts. #35 at 53-57 and #52 at 11.  As a result, the State asserts that the state court decision is entitled deference and no evidentiary hearing is required or necessary.  *Id.* at 11-12.

The Court again disagrees with the State.  The Sixth Amendment requires that jurors in a criminal case base their verdict solely on the evidence presented at trial.  *See Turner v. Louisiana*, 379 U.S. 466, 472-73, 85 S. Ct. 546, 13 L. Ed. 2d 424 (1965).  In *Smith v. Phillips*,

ORDER
PAGE - 16

455 U.S. 209, 215, 102 S. Ct. 940, 71 L. Ed. 2d 78 (1982), the Supreme Court observed that "[t]his Court has long held that the remedy for allegations of juror partiality is a hearing in which the defendant has the opportunity to prove actual bias." The *Smith* Court went on to hold that "[d]ue process means a jury capable and willing to decide the case solely on the evidence before it, and a trial judge ever watchful to prevent prejudicial occurrences and to determine the effect of such occurrences when they happen." *Id.* at 217.

Although the Ninth Circuit Court of Appeals clarified in *Dyer v. Calderon*, *supra*, that due process does not mandate a formal evidentiary hearing whenever juror bias is alleged, the Court also held that

> [a] court confronted with a colorable claim of juror bias must undertake an investigation of relevant facts and circumstances. An informal in camera hearing may be adequate for this purpose; due process requires only that all parties be represented, and that the investigation be reasonably calculated to resolve the doubts raised about the juror's impartiality.

*Id.* at 974-75 (citations omitted).

The Washington State Supreme Court acknowledged that a juror's intention to write a book could create bias. The state court was presented with a Declaration from one juror that there was a woman on the jury who said she intended to write a book about the trial. The court took no additional evidence, nor did it allow an evidentiary hearing to gather any testimony from either Mr. Good or the allegedly biased juror.

Given that the state court acknowledged the desire to write a book could have biased the juror, but then failed to allow Mr. Yates to explore that claim, this Court finds that the state court's decision was based on an unreasonable determination of the facts in light of the state court record, and that the fact-finding procedure employed by the state court was not adequate to afford a full and fair hearing. *See, e.g. Wiggins v. Smith*, 539 U.S. 510, 528, 123 S. Ct. 2527,

ORDER
PAGE - 17

156 L. Ed. 2d 471 (2003).  Mr. Yates was denied the opportunity to investigate the juror's actual bias because he was unable to question the juror about her statement, and was thus unable to show if her intention to write a book about the trial had created any bias.  *See Smith*, 455 U.S. at 217 n.7 (noting that determinations made during hearings on alleged juror bias "will frequently turn upon testimony of the juror in question").  That was then used against him to deny the Claim.  As a result, this Court concludes that Mr. Yates presented sufficient evidence of juror bias to warrant a due process hearing because the state court's denial of a hearing "goes to a material factual issue that is central to petitioner's claim." *Taylor*, 366 F.3d at 1001.  Accordingly, the Court **grants** an evidentiary hearing on Claim 6.

> c.  Claim 10 – Penalty Phase Ineffective Assistance of Counsel

In Claim Ten of his Petition, Mr. Yates alleges that his trial attorneys were ineffective in numerous respects during the preparation, investigation and trial of the penalty phase issues in violation of the Sixth Amendment. Dkt. #11 at Section III, ¶ III.1.J.  Specifically, Mr. Yates alleges that trial counsel: 1) failed to object to the State's expert witness Mark Safarick's inadmissible personality profile testimony;[1] 2) failed to investigate Mr. Yates's severe mental dysfunction; 3) failed to competently investigate Mr. Yates's dangerousness if sentenced to life in prison; 4) failed to investigate and present evidence of the victims' reactions to Mr. Yates's guilty pleas; and 5) failed to present evidence regarding the love and affection in the Yates family. Dkts. #11 at Section IV, ¶ ¶ IV.J.1., *et seq.* and #40 at 29-41.  Mr. Yates also objects to the state court's "balkanized" review of the Claim, arguing that such review is contrary to the

---

[1]  Mr. Yates now acknowledges that an evidentiary hearing is not necessary for the Safarick testimony portion of his claim.  Dkt. #59 at 3 fn. 2.  Therefore, the Court does not analyze that portion of the Claim in this Order.

ORDER
PAGE - 18

*Strickland* standard insofar as the state court failed to examine the cited errors in a cumulative fashion.  Dkt. #40 at 8-10.

The State responds that while Mr. Yates may not agree with the court's conclusions about his Claim, he cannot dispute that the court actually adjudicated the claim on the merits, and therefore he must show that the state court's adjudication of the Claim utilized an unreasonable application of the *Strickland* standard.  Dkt. #52 at 12-16.  The State asserts that Mr. Yates cannot do so.

In reviewing Mr. Yates's Claim in the PRP, the state court found that Mr. Yates had failed to make a *prima facie* showing that counsel's failure to investigate mental and neuropsychological deficits, failure to produce certain humanizing evidence, or the future dangerousness investigation constituted ineffective assistance of counsel.  177 Wn.2d at 37-45. In contrast, the court did find that counsel had been deficient by failing to investigate the possibility of having victims' relatives testify against imposing the death penalty.  *Id.* at 39. Nevertheless, the court found that Mr. Yates could not establish prejudice from that failure to investigate.  *Id.* at 42.  Thus, the court concluded that Mr. Yates's had not demonstrated ineffective assistance on any of the subparts of his Claim.

In *Strickland v. Washington*, the Supreme Court held that a petitioner claiming ineffective assistance of counsel has the burden of demonstrating that (1) the attorney made errors so serious that he or she was not functioning as the "counsel" guaranteed by the Sixth Amendment, and (2) that the deficient performance prejudiced the defense.  466 U.S. 668, 687, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984).  To establish ineffectiveness, the defendant must show that counsel's representation fell below an objective standard of reasonableness. *Williams v. Taylor*, 529 U.S. 362, 390-91, 120 S. Ct. 1495, 146 L. Ed. 2d 389 (2000). To establish

ORDER
PAGE - 19

prejudice, the defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. *Id.*

As an initial matter, the Court acknowledges that Mr. Yates has a *single*, multifaceted claim of ineffective assistance of counsel. *Strickland* stands for the proposition that a multifaceted claim of ineffective assistance of counsel is to be treated as a single claim. This reading of *Strickland* is evidenced by the way that the Supreme Court characterized the ineffective assistance of counsel claim presented in that case:

> Respondent . . . sought collateral relief in state court on numerous grounds, among them that *counsel had rendered ineffective assistance at the sentencing proceeding. Respondent challenged counsel's assistance in six respects.* He asserted that counsel was ineffective because he failed to move for a continuance to prepare for sentencing, to request a psychiatric report, to investigate and present character witnesses, to seek a presentence investigation report, to present meaningful arguments to the sentencing judge, and to investigate the medical examiner's reports or cross-examine the medical experts.

*Strickland*, 466 U.S. at 675 (emphasis added). Thus, the Court characterized the state petition as involving a *single* claim of "ineffective assistance at the sentencing proceeding," consisting of failure "in six respects." *Id.*

This understanding of the ineffective assistance of counsel claim as having multiple facets carried through the Court's description of the state courts' rejection of the claim, as the Court noted that the state trial court found that "[f]our of the assertedly prejudicial errors required little discussion," but "dealt at greater length with the two other *bases* for the ineffectiveness *claim.*" *Id.* at 676-77 (emphasis in the original). The Supreme Court also noted that, after the state courts denied relief, the prisoner next filed a petition for a writ of habeas corpus in federal court, in which "[h]e advanced numerous grounds for relief, among them ineffective assistance of counsel based on the same errors, except for failure to move for a

continuance, as those he had identified in state court." *Id.* at 678.  The Court further noted that the federal district court "held an evidentiary hearing to inquire into trial counsel's efforts to investigate and to present mitigating circumstances."  *Id.* at 679 (also noting that the federal district court ultimately rejected the ineffective assistance claim).

Mr. Yates is correct that, in its discussion of the standards for granting relief on an ineffective assistance of counsel claim, the Supreme Court in *Strickland* often referred to "errors," in the plural, causing the requisite prejudice.  However, those references to "errors" do not indicate adoption of cumulative error review.  To the contrary, the Court had previously characterized the petitioner's collateral attack as involving a single claim of ineffective assistance of counsel in the sentencing proceeding in several "respects," resting on several "bases," and consisting of several "errors."  *See id.* at 675-78.  Thus, to the extent that Mr. Yates seeks a cumulative error review on this Claim, the Court will not approach the Claim in that manner.

In *Strickland*, the Court applied both the "deficient performance" and "prejudice" prongs of the ineffective assistance analysis to a single claim of ineffective assistance "at and before respondent's sentencing proceeding," concluding that counsel's conduct was not unreasonable, but even assuming that it was unreasonable, the petitioner "suffered insufficient prejudice to warrant setting aside his death sentence."  *Id.* at 698-99.  As to deficient performance, the Court concluded that "[c]ounsel's strategy choice [to argue for the extreme emotional distress mitigating circumstance and to rely as fully as possible on respondent's acceptance of responsibility for his crimes] was well within the range of professional reasonable judgments, and the decision not to seek more character or psychological evidence than was already in hand was likewise reasonable."  *Id.* at 699.  Thus, the allegedly deficient

ORDER
PAGE - 21

performance involved two facets, failure to seek more character evidence and failure to seek more psychological evidence, not two claims of ineffective assistance of counsel, each involving failure to seek one of those categories of evidence. The Court also found insufficient prejudice, because "[t]he evidence that respondent says his trial counsel should have offered at the sentencing hearing would barely have altered the sentencing profile presented to the sentencing judge." *Id.* at 699-700. Thus, the Court concluded, "[f]ailure to make the required showing of either deficient performance or sufficient prejudice defeats *the ineffectiveness claim.*" *Id.* at 700 (emphasis added).

Mr. Yates is also correct that *Strickland* does not support a "balkanized" review of individual facets of a single claim of ineffective assistance of counsel. Even if the various aspects or facets of counsel's ineffective assistance in the investigation and presentation of mitigation phase evidence are factually and temporally distinct, they do not constitute separate claims that must be considered individually. It is the entire multifaceted claim of ineffective assistance of counsel in the investigation and presentation of mitigation phase evidence that "'must stand or fall on its own,'" *see Girtman v. Lockhart*, 942 F.2d 468, 475 (8th Cir. 1991) (quoting *Scott v. Jones*, 915 F.2d 1188, 1191 (8th Cir. 1990)), not each *facet* of that claim. That is how this Court views Mr. Yates's Claim 10.

This Court first finds that the Washington State Supreme Court appears to have conducted an improper "balkanized review" of Mr. Yates's Claim. A review of that court's decision reveals that rather than look at the Claim as a whole, it looked at each subpart of the claim, and ultimately determined that there was no individual error on any of the subparts. As a result, it appears to have dismissed the entire claim of ineffective assistance, without any discussion of the Claim as a whole. Thus, Mr. Yates has initially demonstrated that the

Washington Supreme Court employed an unreasonable application of *Strickland* in the way it approached Mr. Yates's Claim.

Further, upon examination of the state court's determinations with respect to the individual facets of the Claim, this Court finds additional errors as discussed below.

     *i)  Failure to Investigate Severe Mental Dysfunction*

Mr. Yates argues that his trial counsel failed to investigate his severe mental dysfunction. He objects to the state court's consideration of that portion of his Claim without holding an evidentiary hearing. Mr. Yates asserts that in reviewing the Claim, the state court applied a standard of practice drawn from an unknown and unidentified source, denied him an opportunity to prove otherwise, engaged in speculation about what counsel did and did not do, and improperly conducted a balkanized prejudice review. Dkt. #40 at 32-36. The State argues that the state court reviewed the evidence of the investigation that trial counsel had conducted, analyzed the post-trial evidence that Mr. Yates had submitted, and reasonably concluded that Mr. Yates had failed to make a *prima facie* showing of ineffective assistance of counsel under *Strickland*. Dkt. #52 at 13.

In its Order on Mr. Yates's PRP, the state court concluded:

> Notwithstanding the new evaluations, Yates cannot show deficient performance by trial counsel. In light of the investigation conducted by trial counsel, including retention of appropriate experts, Yates cannot overcome the "strong presumption" of effective representation. *Strickland*, 466 U.S. at 689.

> While interesting and while presentation of this information to the jury might have resulted in a different outcome, Yates has not shown that based on the information available to trial counsel, failure to further investigate neuropsychological deficits was unreasonable. This is not a case in which trial counsel failed to investigate a category of mitigating evidence, *see Wiggins*, 539 U.S. at 523-24; *Williams*, 529 U.S. at 395-96, or failed to take even basic steps to investigate, *see Rompilla*, 545 U.S. at 382-84 (trial counsel failed to examine defendant's court file or prior conviction despite

ORDER
PAGE - 23

knowing prior convictions were a basis relied on by state to impose the death penalty. Nor was the expert appointed too late to provide meaningful benefit to the case. *See In re Pers. Restraint of Brett*, 142 Wn.2d 868, 878, 16 P.3d 601 (2001).

Trial counsel's duty is to retain qualified experts and provide those experts with relevant information; once appropriate experts are retained, determining what specific tests to perform may be properly left to those experts. *Davis* I, 152 Wn.2d at 733 ("It was clearly within the "'wide range of professionally competent assistance'" for defense counsel 'to rely on properly selected experts.'" (quoting *Harris v. Vasquez*, 949 F.2d 1497, 1525 (9th Cir. 1990) (quoting *Strickland*, 466 U.S. at 690))). Yates's implication that trial counsel should have specifically directed the retained neuropsychologist to look for "deficiencies in temporal lobe functioning," Am. Pers. Restraint Pet. & Supporting Br. at 30, is unavailing. Similarly, failure to retain an expert for the specific purpose of opining on whether Yates possessed a sexual disorder, such a necrophilia, does not render counsel's performance deficient where an expert who is retained possesses the ability to make such a diagnosis. Failure to micromanage the testing performed by experts is different in kind from failing to provide those experts with information needed to conduct their evaluations, which would constitute deficient performance. *Cf. Wallace v. Stewart*, 184 F.3d 1112, 1116 (9th Cir. 1999) (noting counsel's "professional responsibility to investigate and bring to the attention of mental health experts … facts that the experts do not request").

Trial counsel's declaration does not suggest a different conclusion. The declaration does not preclude the inference that although not hired for the *purpose* of opining whether Yates suffered from a sexual deviancy disorder, Dr. Lewis was capable of diagnosing Yates with a sexual deviancy disorder and, in fact, may have done so. Indeed, such a diagnosis would at least be suggested by the fact that Yates committed multiple acts of necrophilia. These acts were known to Yates's counsel, and there is no allegation that counsel failed to disclose these acts to Dr. Lewis. Tellingly, trial counsel does not state either (1) that he failed to investigate the presence of the sexual deviancy disorder or (2) that any failure lacked a tactical justification.

Yates has not made a prima facie showing of ineffective assistance of counsel. Trial counsel retained both a neuropsychologist and a psychiatrist prior to the mitigation phase of trial. Both experts prepared reports for defense counsel. Yates has not shown that trial counsel either failed to provide experts with relevant information or imposed any limitations on the scope of the experts' evaluations, much less that those limitations were unreasonable. *See Davis* I, 152 Wn.2d at 724-26, 731-33 (finding effective assistance where counsel imposed limitations on the work of experts).

ORDER
PAGE - 24

> Accordingly, Yates has not made a prima facie showing of deficient performance based on failure to investigate neuropsychological deficits or the presence of sexual deviancy disorders. His ineffective assistance of counsel claim necessarily fails.

177 Wn.2d at 39-41.

Mr. Yates argues that the court's conclusions are merely speculation, and that in order to reach those conclusions, the court either overlooked or misunderstood the evidence proffered by Yates. Dkt. #40 at 35. In particular, Mr. Yates points to the sworn statement of trial counsel Roger Hunko, who stated:

> [W]e did not retain an expert to opine whether Mr. Yates suffers from a sexual deviancy disorder. Further, because we did not retain an expert to evaluate and form an opinion about whether Mr. Yates' suffers from a sexual disorder, no expert evaluated whether there was any connection between any sexual disease or disorder and the multiple homicides. Thus, our failure to call an expert to explain whether Mr. Yates suffers from a sexual disorder and, if so, whether that disorder was a contributing factor in the murders was the result of our failure to investigate.

*Id.* (citing REC 14670). Mr. Yates argues that the state court's speculation concerning contested factual matters should have signaled the need for reliable fact-finding through an evidentiary hearing, rather than by inference and guesswork. This Court agrees. It is not clear from the record that Dr. Lewis was qualified to diagnose Mr. Yates with a sexual deviancy disorder, that he even considered such a diagnosis, or what information counsel provided him. Thus, the Court concludes that the state court employed an unreasonable procedure when it rejected this facet of Mr. Yates's Claim.

ii)   *Failure to Competently Investigate Future Dangerousness if Sentenced to Life*

Next Mr. Yates argues that his trial counsel failed to competently investigate his future dangerousness if sentenced to life in prison rather than the death penalty. The State argues that the state court reasonably reviewed this portion of the Claim.

ORDER
PAGE - 25

In its Order on Mr. Yates's PRP, the state court concluded:

Trial counsel investigated this issue and, indeed, presented testimony during the penalty phase from eight corrections officers and a records custodian concerning Yates's good behavior in jail. Counsel also presented testimony from the manager of the intensive management unit of the Washington State Penitentiary concerning the infrequency of escapes and assaults. Yates contends it was deficient performance for trial counsel to not additionally hire an expert to assess Yates's future dangerousness. Yates relies on two pieces of evidence: (1) trial counsel's declaration that his failure to retain an expert was not the product of a tactical decision but, rather, the result of his failure to "consider it," Am. Pers. Restraint Pet. & Supporting Br., Ex. A at 4; and (2) a report by Dr. Ronald Roesch that Yates "presented … a low risk for violence in prison," *id.* Ex. U at 1.

Trial counsel's performance did not fall below an objective standard of reasonableness. This was not a case where counsel "ignored pertinent avenues for investigation," *Porter*, 558 U.S. at 40. Counsel conducted a sufficiently "thorough investigation of law and facts." *Strickland*, 466 U.S. at 690. Though counsel's failure to retain an expert on future dangerousness was not a conscious decision (i.e., not the product of strategic thinking) and "*post hoc* rationalization[s]" are inadequate to justify the absence of a strategic decision, *Wiggins*, 539 U.S. at 526-27, this demonstrates deficiency of an investigation only if it is not reasonably complete. For example, in *Wiggins*, trial counsel conducted a minimal preliminary investigation into a capital defendant's life history, obtaining a one-page account of his personal history from the presentence investigation report prepared by the Maryland Division of Parole and Probation and records relating to the defendant's placements in the foster care system. *Id.* at 518, 523. The Court held that failure to acquire more than this "rudimentary knowledge" of the defendant's history was deficient performance, particularly in light of the fact that these records contained leads toward potentially fruitful sources of additional facts. *Id.* at 524-25. Here, by contrast, there were not additional facts to be adduced by further investigation, merely an expert's bolstering of inferences that could already be drawn from the extensive evidence already discovered.

Moreover, even if trial counsel's failure to retain an expert to further investigate Yates's future dangerousness was deficient performance, it was not prejudicial. The additional mitigating evidence counsel failed to discover was largely duplicative of evidence before the jury. Reweighing "the evidence in aggravation against the totality of available mitigating evidence," *id.* at 534, there is simply no reasonable probability that the jury would have returned a different verdict. This is particularly true because, as the State points out, introduction of the study would likely allow for damaging rebuttal evidence.

ORDER
PAGE - 26

177 Wn.2d at 45-46.

Mr. Yates argues that the court's conclusion is "the very model of unreasonableness" and that there was a "profound need for expert testimony in this case". Dkt. #59 at 7. The Court agrees that the type of expert evidence that Mr. Yates's counsel failed to introduce, could have changed the perception of the jurors. As Petitioner's counsel noted, an expert could have testified that future dangerousness in jail is not the same as future dangerousness out in the community, and only an expert could have proffered that evidence. Thus, the evidence would not have been duplicative of the other testimony presented on this issue. Accordingly, having considered the oral argument of counsel, the Court concludes that the state court employed an unreasonable procedure when it rejected this facet of Mr. Yates's Claim as well.

> iii)    *Failure to Investigate and Present Evidence of Victims' Reactions to Guilty Pleas*

Mr. Yates also argues that his counsel failed to adequately investigate and present evidence of victims' reactions to his guilty pleas in Spokane County. Mr. Yates made the same allegation in his PRP before the Washington Supreme Court, and the court agreed that he had made a *prima facie* showing that his trial counsel's performance was deficient based on counsel's failure to investigate the possibility of having victims' relatives testify against imposing the death penalty. 177 Wn.2d at 41-43. Nevertheless, the court concluded:

> Yates cannot establish prejudice from this failure to investigate. Yates has provided a declaration of one victim's mother who stated that his decision to plead guilty "provided [her] with some solace" and that she would have so testified at trial. Am. Pers. Restraint Pet. & Supporting Br., Ex. F at 1. However, this is not a case where the jury "heard almost nothing that would humanize [Yates] or allow [it] to accurately gauge his moral culpability." *Porter*, 558 U.S. at 41; *see infra* pp. 44-45 (discussing humanizing evidence presented). Instead, this additional evidence is the sort that "would barely have altered the sentencing profile presented to the" jury. *Strickland*, 466 U.S. at 700. Weighing against this merely marginally beneficial additional

ORDER
PAGE - 27

evidence is the enormity of Yates's crimes – the murders of 15 human beings.  In addition, had the evidence been fully investigated and presented at trial, it would have opened the door to damaging rebuttal testimony from relatives of Spokane victims who were not comforted by his decision to plead guilty in exchange for a sentence of life imprisonment without the possibility of parole.  *See* State's Corr. Resp. to Pers. Restraint Pet., Apps. H, Q.

177 Wn.2d at 42-43.

Mr. Yates argues that at the point the state court determined deficient performance, it should have allowed an evidentiary hearing to accurately assess the impact of victim's mother's testimony, and how jurors would have reacted.  Dkt. #40 at 38-39.  Mr. Yates further argues that the state court improperly speculated about the possibility of damaging rebuttal testimony, as Washington law provides for the potential of a hearing to determine the scope of admissible rebuttal evidence.  Dkt. #40 at 39.  The State responds that the court did not merely speculate. Dkt. #52 at 14.  It points to Declarations submitted by two other victims who expressed anger at the plea deals, and felt no sense of comfort or closure from the guilty pleas.  *Id.*

The Court agrees with the State that no evidentiary hearing was required on this specific facet of Mr. Yates's claim.  Mr. Yates is not persuasive that the state court was unreasonable in its conclusion.  *See Strickland,* 466 U.S. at 700 (no prejudice in failure to present evidence because the overwhelming aggravating circumstances outweighed the mitigating circumstances and the proffered evidence would have opened the door to harmful and conflicting evidence); *Campbell,* 829 F.2d at 1464 (failure to present mitigating evidence not prejudicial because "given the overwhelming aggravating factors, and, the heinous nature of the crime, there is no reasonable likelihood that the jury's verdict would have been different had the mitigating evidence been introduced," and the mitigating evidence could have opened the door to strong rebuttal evidence).  However, while the state court may not have erroneously concluded that

ORDER
PAGE - 28

this particular facet of the ineffective assistance claim did not result in prejudice, the question is whether the claimed deficiencies as a whole caused prejudice. That question can only be answered after an evidentiary hearing is conducted and the Claim is then reviewed as a whole.

        *iv)*     *Failure to Present Evidence Regarding Familial Love and Affection*

Finally, Mr. Yates argues that his trial counsel was ineffective in failing to present certain evidence to humanize him. The Washington Supreme Court rejected that facet of Mr. Yates's Claim, explaining:

> Yates next contends that trial counsel's failure to "develop[ ] and present[ ]" additional evidence to humanize him rendered counsel's performance ineffective. Am. Pers. Restraint Pet. & Supporting Br. at 36. As a starting point, trial counsel presented numerous witnesses tending to humanize Yates, including family members, high school sports coaches, fellow members of the military who had served with Yates, and clergy and prisoners who had had religious discussions with Yates. Further, Yates delivered an allocution to the jury. The additional evidence collateral counsel contends should have been presented includes Yates's daughters, son, stepmother, half sisters, brother-in-law, aunt, uncle, cousins, aunt's sister, and school classmate.

> Trial counsel was "obviously interested" in presenting testimony of family members but, after investigating that avenue, discovered that "[m]ost of Mr. Yates' family members were understandably conflicted." *Id.* Ex. A at 4. As a result, trial counsel decided not to call additional family members during the penalty phase. *Id.* Presenting testimony by conflicted family members, subject to cross-examination, might have prompted the prosecutor to argue that Yates had also victimized his own family through his actions. Counsel's strategic decision is not objectively unreasonable. *See Stenson*, 142 Wn.2d at 741-47 (holding that failure to present evidence rebutting lack of remorse was not deficient where counsel made a substantial attempt to humanize defendant).

177 Wn.2d at 44-45.

Mr. Yates argues that the value of the proposed testimony could only have been reliably determined after an evidentiary hearing. Dkt. #40 at 40-41. However, on this record, he cannot demonstrate that the state court's application of the *Strickland* standard was unreasonable.

Under AEDPA, the question is whether there is any reasonable argument that counsel satisfied the *Strickland* standard, and the Washington Supreme Court answered that question reasonably in light of the evidence that was presented.  Accordingly, there was no error in denying an evidentiary hearing on this facet of Mr. Yates's claim.

Looking at Claim 10 as a whole, and in light of the individual analyses of the several facets of the Claim as described above, the Court **grants** an evidentiary hearing restricted to the facets identified as requiring additional evidence.

### d.  Claim 15 – Cumulative Prejudice

Finally, Mr. Yates appears to seek an evidentiary hearing regarding his allegations of cumulative prejudice under Claim Fifteen.  Given the decisions reached above, it is not necessary to hold an evidentiary hearing separately on this Claim.  Counsel will presumably be able to develop the Claim after additional evidence is heard on Claims 2, 6 and 10.

## IV.   CONCLUSION

The Court, having reviewed Petitioner's motion for evidentiary hearing, the opposition thereto and the reply in support thereof, along with the remainder of the record, hereby finds and ORDERS:

1. Petitioner's Motion for Evidentiary Hearing as to Claims 1, 2, 6, 10 and 15 (Dkt. #40) is GRANTED IN PART AND DENIED IN PART as set forth above.

2. The Undersigned's In-Court Deputy SHALL contact the parties to schedule such a hearing at a mutually convenient date and time.

3. The Petition for Habeas Corpus will be replaced on the Court's calendar once the evidentiary hearing has been held and a date has been set for the Petitioner's Reply brief.

DATED this 2 day of November, 2016.

RICARDO S. MARTINEZ
CHIEF UNITED STATES DISTRICT JUDGE